IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL LAWRENCE CHAVEZ,

    Plaintiff,

v.                                                                                                              Civ. No. 16-1415 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

**THIS MATTER** is before the Court on Plaintiff Michael Chavez's Motion to Remand to Agency. Doc. 19. For the reasons discussed below, the Court will DENY Plaintiff's Motion.

**I.    Background**

Plaintiff initially filed a claim for supplemental security income and disability insurance benefits on May 11, 2010. AR 481. Plaintiff alleged a disability onset date of October 1, 2008, due to problems with his right knee, migraines, blackouts, back pain, anxiety, and an inability to focus. AR 129, 496. Plaintiff's claims were initially denied on October 25, 2010, and upon reconsideration on March 1, 2011. AR 129. On May 22, 2013, the ALJ held a hearing and ultimately issued a partially favorable decision. AR 144. The Appeals Council subsequently granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the matter to the ALJ for a new decision. AR 150-54. The ALJ held the second hearing on November 15, 2015, and issued her decision finding Plaintiff not disabled on January 21, 2016. AR 41. Plaintiff now appeals.

Because the parties are familiar with the administrative record, the Court will reserve discussion of Plaintiff's pertinent medical records for its analysis.

1

## II. Applicable Law

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Furthermore, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at

1010.

**III. Analysis**

Plaintiff raises five issues for review. First, Plaintiff contends that the ALJ erred in her assessment of the weight given to the opinions of Dr. Steve Baum, Dr. Kimothi Cain, Dr. Thomas Dhanens, state agency reviewers Drs. Blacharsh and Chiang, and function reports submitted by Plaintiff's family members. Second, Plaintiff contends that the ALJ erred in her assessment under the listings for mental impairments. Third, Plaintiff contends that the ALJ erred in her assessment of Plaintiff's credibility and failed to apply the factors set forth in Social Security Ruling 96-7p. Fourth, Plaintiff argues that the ALJ's RFC finding was not supported by the evidence. Finally, Plaintiff argues that the ALJ erred in her assessment at Steps Four and Five of the sequential evaluation process. The Court will address these issues in turn.

**A. The ALJ Properly Weighed the Opinions of Doctors Baum, Cain, and Dhanens; State Agency Reviewers Drs. Blacharsh and Chiang; and Statements Provided by Plaintiff's Family Members**

Plaintiff contends that the ALJ improperly assessed the weight assigned to various opinions and third-party function reports. These include the opinions of Dr. Baum, Dr. Cain, and Dr. Dhanens, Dr. Blacharsh, and Dr. Chiang, as well as third-party function reports submitted by Plaintiff's sister and his girlfriend. As an initial matter, the Court notes that likely owing to the number of issues raised by Plaintiff, many of his arguments are borderline underdeveloped. Nevertheless, for the reasons discussed below, the Court concludes that the ALJ did not err in her assessment of the weight given this evidence.

*i. Family Members' Function Reports*

Plaintiff contends that the ALJ gave little weight to the statements of Plaintiff's sister and his girlfriend. Plaintiff argues that the ALJ "without explanation, asserted that the statements

4

were inconsistent with the medical evidence." Doc. 20 at 12. Plaintiff's argument on this point constitutes one paragraph and succinctly states that it is "notable that the statements are entirely consistent with [Plaintiff's] statements, with each other, with [Plaintiff's testimony] and with documentation of severe cognitive impairment as a result of traumatic brain injury." Doc. 20 at 12.

The issue, however, is not whether the statements are supported by other evidence in the record. The issue is instead whether the ALJ complied with the appropriate legal standards in considering the statements and whether the ALJ's decision is supported by substantial evidence. The ALJ gave these statements little weight on the basis that the "medical records do not corroborate the limitations described, and the reports generally parallel[] that of the claimant's alleged severe limitations." AR 38. Earlier in her decision, the ALJ stated that she reviewed the third-party function reports of these individuals and provided a summarization of the statements. AR 29. In regard to statements from "other sources," such as these, an ALJ "generally should explain the weight given…or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (internal quotation marks and citation omitted). The ALJ is not required to discuss every piece of evidence in a third-party function report. *See Romero v. Colvin*, Civ. No. 15-254, 2016 WL 8229940, *6 (D.N.M. June 23, 2016). In the present case, although the ALJ did not discuss her reasons for specifically rejecting each piece of evidence in the third-party function reports, the ALJ's summarization of the evidence in conjunction with her finding that she accorded them little weight due to their inconsistency with the medical records complied with the appropriate legal standards and allowed this Court to engage in a meaningful review of her decision.

5

### ii. State Agency Reviewers Dr. Blacharsh and Dr. Elizabeth Chiang

Plaintiff contends that the ALJ erred in assessing the weight given to state agency reviewers Dr. Jill Blacharsh and Dr. Elizabeth Chiang. Plaintiff argues that the ALJ erred because she found "that these sources had reviewed all evidence when rendering their opinions" but that the opinions were issued in 2010 and 2011—long before the existence of most of the evidence. Doc. 20 at 11-12. Plaintiff's argument on this point misstates the basis of the ALJ's decision. The full sentence in the ALJ's decision states, "I give significant weight to the opinions of these psychologists because they [were] rendered after a thorough review of the record available to them *at the time and are consistent with the record as a whole*." AR 38 (emphasis added). The fact that the ALJ recognized that the opinions were given in 2010 and 2011 and then stated that the opinions were otherwise consistent with the medical record undercuts Plaintiff's contention. The Court accordingly rejects Plaintiff's argument on this point.

### iii. Dr. Baum

Dr. Baum performed a consultative examination of Plaintiff on August 28, 2010. AR 688. Dr. Baum found no behavioral abnormalities and that Plaintiff's mood and affect were consistent. AR 689. Dr. Baum noted that Plaintiff reported that he hears "negative critical voices and a radio sound in the background." AR 689. Dr. Baum further noted that Plaintiff reported experiencing 3-4 migraines per week and occasional blackouts. AR 689. Dr. Baum estimated that Plaintiff's IQ is average and reported that Plaintiff was able to spell "world" forward and backward, perform serial 3s, and could recall 3/3 objects after a distracter task. AR 689. Plaintiff was unable, however, to perform serial 7s or abstract a simple proverb. AR 689. Dr. Baum ultimately found that Plaintiff was suffering from "untreated psychosis." AR 689. Dr. Baum

indicated that Plaintiff has marked limitations in his ability to understand and remember detailed or complex instructions and carry out instructions. AR 690. Dr. Baum further found that Plaintiff has a moderate limitation in his ability to attend and concentrate. AR 690.

Plaintiff contends that the ALJ erred because she accorded Dr. Baum's opinion little weight based only on a finding that it was not supported by his objective findings. Upon review of the ALJ's decision, the Court concludes that the ALJ's findings regarding Dr. Baum's opinion were more extensive than Plaintiff indicates and that substantial evidence supports her decision to accord the opinion little weight. First, as noted by Plaintiff, the ALJ did conclude that Dr. Baum's opinion was not supported by his objective findings. In so concluding, the ALJ discussed internal inconsistencies in Dr. Baum's opinion, including the fact that Plaintiff was able to spell "world" forward and backward, perform serial 3s, and recall 3/3 objects after a distracter task. AR 37. The ALJ further noted that Dr. Baum found that Plaintiff's social judgment was intact and that there was an inconsistency between Dr. Baum's finding that Plaintiff has mild limitations in regard to carrying out short, simple instructions but marked limitations in his overall ability to carry out instructions. AR 37. Based on these findings, the ALJ concluded that "these findings do not support his opinion that the claimant has marked limitations in the ability to carry out instructions" and assessed Dr. Baum's opinion little weight. AR 37. Plaintiff does not address any of these findings in his argument and the Court finds no basis to conclude that the ALJ erred in her assessment of Dr. Baum's opinion.

     *iv.*     ***Dr. Dhanens***

Plaintiff contends that the ALJ erred in assessing Dr. Dhanens' opinion. Doc. 20 at 10-11. The ALJ accorded Dr. Dhanens' opinion "great weight." AR 37. Dr. Dhanens found that Plaintiff has marked limitations in his ability to carry out complex instructions and to make

judgments on complex work-related decisions. However, Dr. Dhanens questioned the results of Plaintiff's IQ test because he thought Plaintiff was an "unreliable reporter." AR 992. Dr. Dhanens also noted that there were no medical records to support a finding of traumatic brain injury and that neither Plaintiff's scores nor presentation suggested the presence of such a diagnosis. AR 992.

Plaintiff's argument on this point requires a bit of parsing out. Plaintiff advocates a narrative of the medical records that would essentially hold that Plaintiff may have had some mild cognition issues earlier in life but that multiple head injuries led to a significant decrease in his cognitive capabilities. Accordingly, Plaintiff takes issue with Dr. Dhanens' opinion that there was no medical evidence supporting a diagnosis of traumatic brain injury. Plaintiff speculates that Dr. Dhanens' opinion on this point means that he either did not receive or did not review all of Plaintiff's medical records. Doc. 20 at 11. Plaintiff therefore contends that the ALJ was incorrect to conclude that Dr. Dhanens' opinion was consistent with the medical record. In sum, Plaintiff argues that great weight should have been accorded to Dr. Dhanens' objective findings regarding Plaintiff's IQ but that no weight should have been accorded to his other opinions.

The Court rejects Plaintiff's framing of Dr. Dhanens' findings. Dr. Dhanens stated that he did not "see medical documentation, such as ER records, to confirm there was one, or more, significant head injuries." AR 992. Later in his report, Dr. Dhanens clarified that "[i]f there is documentation, such as an MRI or CT scan, to confirm brain injury, this could change my opinion." AR 992. Read in context, the Court does not understand Dr. Dhanens to be opining that Plaintiff never suffered a head injury but instead that there are no medical records supporting a diagnosis of traumatic brain injury. Such a reading is more consistent with the ALJ's decision and the medical record as a whole. For instance, in reviewing the medical records regarding

8

Plaintiff's head injuries, the ALJ stated earlier in her decision that she "could find no imaging results that demonstrate evidence of brain injuries." AR 32. Further, in rejecting Plaintiff's argument that his IQ was decreased by approximately fifteen points due to the head injuries, the ALJ found that "there are no diagnostic tests that support such an assertion" nor "medical opinions that support such [an] assertion" and that Plaintiff's "demonstrable activities, [post-injury] indicate his functioning level is inconsistent with a 65 IQ score." AR 32. The Court's review of the medical evidence confirms the ALJ's findings on this point. *See e.g.* AR 872 (medical record for head injury noting nasal bone fracture but "no intracranial or traumatic process noted."). The Court accordingly rejects Plaintiff's argument on this point.

    *v.*        *Dr. Cain*

Plaintiff contends that the ALJ erred in assessing Dr. Kimothi Cain's opinion little weight. Dr. Cain opined that Plaintiff has marked limitations in his ability to understand, remember, and carry out detailed instruction; maintain attention and concentration for extended periods; sustain an ordinary routine without supervision; work with others without being distracted by them; and complete a normal workday or work week without interruptions from psychologically based symptoms or perform at a consistent pace without an unreasonable number and length of rest periods. AR 792-99. Plaintiff summarily contends that "[a]lthough Dr. Cain had not treated [Plaintiff] long, her findings are consistent with other evidence." In support of this statement, Plaintiff cites to Dr. Baum's report.

The Court rejects Plaintiff's argument. Plaintiff does not even contend that the ALJ's reasoning in giving Dr. Cain's opinion less weight is incorrect. Indeed, Plaintiff acknowledges that Dr. Cain had not treated Plaintiff long, which was, in part, the reason the ALJ accorded Dr. Cain's opinion little weight. *See* AR 35. Further, Plaintiff's argument merely invites the Court to

9

weigh Dr. Cain and Dr. Baum's opinions over other evidence in the record which supports the ALJ's decision. In sum, Plaintiff's argument merely asks the Court to reweigh the evidence, which it will not do. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court accordingly rejects this argument.

### B. The ALJ Appropriately Assessed the Listings

Plaintiff contends that the ALJ disregarded medical evidence and therefore improperly assessed whether Plaintiff's mental impairments met the criteria for the listings. Doc. 20 at 12-15. Plaintiff's argument, however, is based on the assumption that Dr. Cain's opinion was entitled to greater weight. In her decision at step three, the ALJ found that Dr. Cain's opinions were entitled to little weight; therefore, the ALJ did not adopt the moderate or marked limitations found by Dr. Cain. *See* AR 25-27. As determined above, the Court upholds the ALJ's decision assessing Dr. Cain's opinion little weight and therefore rejects this contention.

### C. The ALJ Appropriately Assessed Plaintiff's Credibility

Plaintiff contends that the ALJ erred in her assessment of Plaintiff's credibility. In support of this argument, Plaintiff highlights one portion of the ALJ's decision in which the ALJ found that a two year absence of medical treatment casts doubt on Plaintiff's credibility. Plaintiff contends that such a finding is contrary to SSR 96-7p.

SSR 96-7p states that medical records demonstrating consistent attempts by the claimant to seek medical treatment for pain may lend support to a claimant's allegations regarding the intensity and persistence of his or her symptoms. On the other hand, an "individual's statements may be less credible if the level or frequency or treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p. The ruling

cautions, however, that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p.

As initial matter, the Court notes that Plaintiff points to no information provided by Plaintiff that the ALJ should have considered before drawing the inference that the two year gap in treatment casts doubt on his credibility. Thus, it is not apparent that the ALJ failed to comply with SSR 96-7p. Regardless, the Court rejects Plaintiff's argument because the basis of Plaintiff's argument is that this finding represented the bulk of the ALJ's credibility determination and, based on the Court's review, this is not true. Near the end of her decision, the ALJ stated, "I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." AR 38. The Court will not list every example of the ALJ comparing Plaintiff's allegations regarding the intensity and persistence of his symptoms with the medical record. But having extensively reviewed the ALJ's decision, it is apparent that the ALJ conducted a thorough review of medical record and determined that it did not support Plaintiff's allegations. *See e.g.* AR 29 (stating that the "medical record does not support [Plaintiff's] allegations of severe functional limitations" and beginning review of medical record). *See Williams v. Bowen*, 844 F.2d 748, 755 (10th Cir. 1988) (stating that credibility determinations are the province of the ALJ and should not be overturned lightly)

### D. The RFC is Supported by Substantial Evidence

Plaintiff contends that the ALJ's RFC is not supported by substantial evidence. In relevant part, the ALJ determined that Plaintiff has the residual functional capacity to perform medium work except that he should no more than occasionally kneel and crawl. AR 28. Medium work "requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." SSR 83-10. Plaintiff argues that the evidence shows that he has had chronic right knee problems since 2007 and that this impairment limits his ability to stand or walk for prolonged periods of time. Doc. 20 at 16. Plaintiff therefore argues that the ALJ erred in determining that he could perform medium work.

The record reflects that an MRI in October 2009 revealed that Plaintiff had a torn medial meniscus. AR 817. Plaintiff was scheduled for surgery in 2009 but, after cancelling appointments, he did not actually undertake surgery until April 2011. AR 813, 815, 820. The ALJ found that the medical records indicated that Plaintiff was doing "quite well" post-surgery. AR 30; *see e.g.* AR 825, 828. In May 2011, his physical therapist noted that she saw "no disability in his lower extremities that would contribute positively or negatively for his disability claim and that he has "little or no difficulty performing his activities of daily living." AR 30 (citing AR 823, 825).

In contending that the ALJ erred, Plaintiff posits that the ALJ's reliance on Plaintiff's report in July 2011 that he can walk for two miles without assistance was a mistake because Plaintiff reported being able to walk various distances over the course of his treatment. Doc. 20 at 16. Plaintiff highlights that he reported in August 2010 that he could only walk two blocks and in January 2011 he reported he could only walk one mile. Doc. 20 at 16. Plaintiff therefore argues that, in actuality, the record reflects that Plaintiff does not know the difference between a

mile and a block and the ALJ's reliance on his report that he could walk two miles was therefore error.

The Court rejects this argument. First, the Court notes that Plaintiff's reports that he could only walk two blocks or one mile occurred before his surgery and accordingly do not call into question the ALJ's determination that *post-surgery* he was doing well and could walk two miles without assistance. Second, the conclusion that Plaintiff's argument invites is premised on the Court making a factual finding that Plaintiff did not know the difference between a mile and a block. However, the Court is tasked with reviewing whether substantial evidence supports the ALJ's decision, not making speculations as to whether Plaintiff understood the difference between a mile and block.

Furthermore, to the extent that Plaintiff is contending that the ALJ erred in assessing the opinion of Dr. Karl Moedl, and that the ALJ's finding that Plaintiff is limited to medium work is therefore not supported by substantial evidence, the Court rejects this argument. While the Court recognizes that Dr. Moedl's report was issued before his knee surgery, Plaintiff's argument again disregards the findings the ALJ made regarding Plaintiff's condition post-surgery. In sum, the Court concludes that substantial evidence supports the ALJ's decision on this point

**E.  The ALJ Did Not Err At Step Four or Five of the Sequential Evaluation Process**

Plaintiff challenges the ALJ's findings at Steps Four and Five. At Step Four, the ALJ found that given Plaintiff's RFC, he is capable of performing his past relevant work as a Laborer Stores. AR 39. At Step Five, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy. AR 39.

Plaintiff contends that the ALJ erred in these determinations. As for the finding that Plaintiff could perform past relevant work, Plaintiff contends that the ALJ erred for two reasons.

First, Plaintiff contends that the ALJ's findings were based on an improper RFC limiting Plaintiff to medium work. Doc. 20 at 17-18. Second, Plaintiff contends that Plaintiff's past relevant work required a GED reasoning level of 2 and that he is restricted to jobs with a GED reasoning level of 1. Doc. 20 at 18. As for performing other work, Plaintiff contends that the ALJ failed to take into account Plaintiff's mental impairments.

As an initial matter, to the extent that Plaintiff's argument is premised on the Court concluding that the ALJ's determination that he was limited to medium work was error, the Court rejects this argument. As the Court concluded above, substantial evidence supported the ALJ's finding that Plaintiff was limited to medium work. Accordingly, it was not error for the ALJ to conclude that Plaintiff could perform his past relevant work at the medium exertional level or other work existing in the national economy at the light exertional level.

As for Plaintiff's second argument, even assuming that the ALJ erred in regard to Plaintiff's GED reasoning levels, the Court concludes that such error would be harmless. As noted above, the ALJ determined that Plaintiff was capable of performing three other jobs that exist in significant numbers in the national economy. Two of those jobs, cleaner/polisher and housekeeping/cleaner encompass the GED levels advocated for by Plaintiff. With these two jobs combined, there exists approximately 170,000 jobs in the national economy, which, as matter of law, is a significant number of jobs. *Ferguson v. Berryhill*, No. 16-1348, 2017 WL 2536436 (D. Kan. June 6, 2017) (recognizing that the Tenth Circuit has determined that 152,000 jobs is significant as a matter of law). Accordingly, even assuming Plaintiff is limited to a GED reasoning level of 1, the ALJ found that significant jobs exist in the national economy at that level and such alleged error the ALJ made in assessing Plaintiff's GED reasoning level is harmless. *See Anderson v. Colvin*, 514 Fed App'x 756, 764 (10th Cir. 2013) (concluding that

even if the claimant was limited to a reasoning development level of 1, the vocational expert's identification of the jobs of cleaner and housekeeper, which existed in significant numbers in the national economy, rendered such error harmless).

**IV.     Conclusion**

Based on the foregoing, the Court affirms the ALJ's decision and therefore DENIES Plaintiff's Motion to Remand to Agency (Doc. 19).

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent